IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JOSEPH MONOPOLI, *et al.*,

    Plaintiffs,

           v.

MERCEDES-BENZ USA, LLC, *et al.*,

    Defendants.

Civil Action No.
1:21-cv-01353-SDG

## OPINION AND ORDER

This matter is before the Court on Defendants Mercedes-Benz USA, LLC (MBUSA) and Daimler AG's (collectively, Mercedes) motion to dismiss [ECF 38]. After careful consideration of the parties' briefing, and with the benefit of oral argument, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion.

## I.   BACKGROUND

The Court accepts the following facts as true for purposes of this motion.[1]

Plaintiffs Joseph Monopoli, James Fitzpatrick, Synthia Praglin, and Sawntanaia

---

[1] *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 n.1 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.").

Harris each purchased a Mercedes vehicle equipped with Active Head Restraint (AHR) technology, branded by Mercedes as NECK-PRO.[2]

AHR is embedded in the vehicles' headrests and is designed to prevent whiplash during rear-end collisions by propelling the headrest forward and upward to meet the driver or passenger's head.[3] AHR's internal mechanism includes a latch pin that keeps the AHR in place until a rear-end collision occurs.[4] Before deploying, the latch pin holds back 75 pounds of force.[5] The latch pin is made of a lightweight plastic that is prone to breaking.[6] When the plastic breaks, the AHR deploys and can strike the driver or passenger in the back of the head, without a triggering collision, at the rate of 12 miles per hour.[7]

### A.    Mercedes's Knowledge of the Defect

Prior to the vehicles' production, Mercedes performed testing of the AHR and its component parts, which should have revealed that the latch pin is prone to

---

[2]    ECF 1, ¶¶ 1, 20, 23, 26, 29.

[3]    *Id.* ¶ 93.

[4]    *Id.* ¶¶ 94, 96.

[5]    *Id.* ¶ 96.

[6]    *Id.*

[7]    *Id.* ¶ 97.

breaking during normal operation.[8] Specifically, the standard automotive industry tests are (1) Failure Modes and Effects Analyses (FMEA), (2) Finite Element Analyses (FEA), and (3) Time to Creep Failure Analyses, otherwise known as Plastic Creep Testing.[9] FMEA assess the different ways in which component parts, such as the plastic latch pin, may fail.[10] FEA assess the look and design of a vehicle's component parts and, if performed correctly, should have revealed the amount of pressure that the latch pin can withstand.[11] The Plastic Creep tests examine the service life of plastic components—such as the plastic latch pin— subjected to a static load and, if performed correctly, would have revealed that normal operation exerted enough pressure on the latch pin for it to break.[12]

After production, consumers reported to the National Highway Traffic Safety Administration (NHTSA) that the AHR deployed during normal operation and not after a rear-end collision.[13] For example, one consumer complaint cited by Plaintiffs states: "[T]he head rest deployed without warning. The vehicle was

---

[8]    *Id.* ¶¶ 129–33.

[9]    *Id.* ¶ 129.

[10]   *Id.* ¶ 130.

[11]   *Id.* ¶ 131.

[12]   *Id.* ¶ 132.

[13]   *Id.* ¶ 136.

towed to a dealer but was not diagnosed or repaired. The manufacturer was notified of the failure."[14] Mercedes regularly monitors NHTSA complaints.[15] Consumers also complained about this issue on Mercedes-specific online forums, also monitored by Mercedes.[16]

In 2008, Mercedes issued a Technical Service Bulletin to its exclusive network of dealerships titled "Restraints – Head Restraint Activate Without Cause," in which Mercedes claimed that the AHR failure potentially resulted from damage to the vehicles' wiring.[17] Despite knowing that the AHR could malfunction, Mercedes never disclosed this information to consumers. Mercedes included descriptions of NECK-PRO, including how it functions and that it is meant to prevent whiplash during rear end collisions, in manuals, advertisements, and other public statements,[18] but never disclosed in these materials that the AHR

---

[14]   *Id.* ¶ 136(b).

[15]   *Id.* ¶ 135.

[16]   *Id.* ¶¶ 137–38.

[17]   *Id.* ¶¶ 139–41.

[18]   *Id.* ¶¶ 107–15.

may deploy during normal operation.[19] No purchaser was ever alerted of the defect and Mercedes never recalled vehicles equipped with NECK-PRO.[20]

### B.    Plaintiffs' Claims

Plaintiffs filed suit against MBUSA, the distributer of Mercedes vehicles in the United States,[21] and Daimler AG, the German manufacturer of Mercedes vehicles.[22] Plaintiffs generally allege that Mercedes knew about the defective AHR, failed to inform purchasers about the defect, and concealed the nature of the defect from purchasers.[23]

Plaintiff Joseph Monopoli is a citizen of New York.[24] In 2017, Monopoli purchased a 2011 Mercedes vehicle, equipped with AHR, from a dealership unaffiliated with Mercedes.[25] Monopoli brings claims on behalf of himself and on behalf of a putative class of persons in New York who purchased a Mercedes

---

[19]    *Id.* ¶ 115.

[20]    *Id.* ¶ 143.

[21]    *Id.* ¶ 43.

[22]    *Id.* ¶ 47.

[23]    *See generally, id.*

[24]    *Id.* ¶ 19.

[25]    *Id.* ¶ 20.

vehicle with a defective AHR,[26] alleging violations of N.Y. Gen. Bus. Law §§ 349 and 350.[27]

Plaintiff James Fitzpatrick is a North Carolina citizen.[28] In 2018, Fitzpatrick purchased a 2009 Mercedes vehicle, equipped with AHR, from an unaffiliated dealership.[29] Fitzpatrick brings claims on behalf of himself and on behalf of a putative class of persons in North Carolina who purchased a Mercedes vehicle with a defective AHR,[30] alleging violations of North Carolina's Unfair and Deceptive Trade Practices Act.[31]

Plaintiff Synthia Praglin is a California citizen who purchased a 2014 Mercedes vehicle, equipped with AHR, from an affiliated Mercedes dealership in 2016.[32] Plaintiff Sawntanaia Harris is a California citizen who purchased a 2016 Mercedes vehicle, equipped with AHR, from an affiliated Mercedes dealership in

---

[26] *Id.* ¶ 171.

[27] *Id.* ¶¶ 225–50.

[28] *Id.* ¶ 22.

[29] *Id.* ¶ 23.

[30] *Id.* ¶ 171.

[31] Id. ¶¶ 304–16.

[32] *Id.* ¶¶ 25–26.

2019.[33] Harris was struck in the back of the head when the AHR randomly deployed without a triggering collision.[34] She is the only Plaintiff who experienced an uncommanded AHR deployment. Praglin and Harris bring claims on behalf of themselves and on behalf of a putative class of persons in California who purchased a Mercedes vehicle with a defective AHR,[35] alleging violations of California's unfair competition law,[36] California's consumer legal remedies act,[37] California's false advertising law,[38] and the Song-Beverly Consumer Warranty Act for breach of the implied warranty of merchantability.[39]

Collectively, Plaintiffs bring claims on behalf of a putative nationwide consumer class of persons who purchased Mercedes vehicles with a defective AHR,[40] alleging (1) fraudulent concealment;[41] (2) fraudulent misrepresentation;[42]

---

[33] *Id.* ¶¶ 28–29.

[34] *Id.* ¶ 30.

[35] *Id.* ¶ 171.

[36] *Id.* ¶¶ 251–61.

[37] *Id.* ¶¶ 262–79.

[38] *Id.* ¶¶ 280–86.

[39] *Id.* ¶¶ 287–303.

[40] *Id.*

[41] *Id.* ¶¶ 186–99.

[42] *Id.* ¶¶ 200–08.

(3) negligent design and manufacturing;[43] (4) negligent failure to warn;[44] (5) violation of Georgia's Uniform Deceptive Trade Practices Act (GUDTPA);[45] (6) violation of the Magnuson-Moss Warranty Act (MMWA);[46] and (7) unjust enrichment.[47]

### C.   Procedural History

Plaintiffs, along with several Florida based plaintiffs, first filed suit against Mercedes, as well as Grammer AG, the manufacturer of the AHR, in the Southern District of Florida, alleging RICO violations, fraudulent concealment, fraud, violations of the MMWA, unjust enrichment, and violations of various states' unfair competition and unfair trade practices acts. *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1200 (S.D. Fla. 2021). The Southern District of Florida dismissed Plaintiffs' nationwide class claims for lack of standing, dismissed the MMWA claims for failure to satisfy the 100-named-plaintiff jurisdictional requirement, and dismissed the non-Florida based plaintiffs' claims for lack of personal jurisdiction. *Id.* at 1204–27.

---

[43]   *Id.* ¶¶ 209–15.

[44]   *Id.* ¶¶ 216–24.

[45]   *Id.* ¶¶ 317–28.

[46]   *Id.* ¶¶ 329–48.

[47]   *Id.* ¶¶ 349–57.

Plaintiffs then filed suit in this Court because MBUSA is headquartered in this district and Daimler AG imports vehicles equipped with AHR into this district.[48] Mercedes moves to dismiss Plaintiffs' Complaint for the same reasons it moved to dismiss the Southern District of Florida case, including Plaintiffs' lack of standing to bring nationwide claims, failure to satisfy the MMWA jurisdictional requirements, and failure to state a claim. The motion is fully briefed and, after oral argument, ripe for consideration.[49]

## II.   Class Representative Standing

As a threshold matter, the Court must address Mercedes's challenge to Plaintiffs' standing. *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1296 (11th Cir. 2019) ("Because standing to sue implicates jurisdiction, a court must satisfy itself that the plaintiff has standing before proceeding to consider the merits of her claim, no matter how weighty or interesting."). Mercedes challenges Plaintiffs' standing to bring their fraud, negligence, unjust enrichment, and MMWA claims on behalf of

---

[48]   *Id.* ¶¶ 43, 48, 79–83.

[49]   ECF 38 (Mercedes's Mot. Dismiss); ECF 39 (Pls.' Opp.); ECF 40 (Pls.' filing of supp. authority); ECF 41 (Mercedes's Reply); ECF 42 (Pls.' filing of supp. authority); ECF 43 (Mercedes's resp. to Pls.' supp. authority); ECF 44 (Pls.' filing of supp. authority).

a nationwide class and challenges their individual and class-representative standing to bring claims under GUDTPA.

### A.   Legal Standard

Article III of the Constitution limits federal courts to consideration of cases and controversies. U.S. Const. art. III, § 2. The doctrine of standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (quoting *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991)). Standing is comprised of three elements: (1) an actual or imminent injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that the injury will be redressed by the court. *Lujan*, 504 U.S. at 560–61.

Additionally, in the class action context,

> Article III requires two related, but distinct, inquiries to determine whether a class representative has "standing to represent a class." First, the class representative must "satisfy the individual standing prerequisites" of the case or controversy requirement. Second, the class representative "must also 'be part of the class and possess the same interest and suffer the same injury as the class members.'"

*Fox v. Ritz-Carlton Hotel Co., L.L.C.*, 977 F.3d 1039, 1046 (11th Cir. 2020) (quoting *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008)).  This requires that "at least one named class representative ha[ve] Article III standing to raise each class subclaim." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000) (quoting *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987)). It is therefore appropriate for the Court to determine class representative standing on a motion to dismiss.

### B.    Common-Law Claims

Citing *Lewis*, Mercedes argues that Plaintiffs' common-law claims fail because "they did not suffer any injuries in fact traceable to alleged violations of laws in other states," and therefore do not have standing to assert claims "under any state's law but their own." 530 F. Supp. 3d at 1205. Plaintiffs respond that Georgia law applies uniformly to these claims, and so the concern raised in *Lewis* — namely, that the nationwide common-law claims implicated the laws of fifty states — is not an issue here. The Court agrees with Plaintiffs.

Following the reasoning in the *Lewis* opinion, the Court finds that Plaintiffs have standing to bring their common-law claims because, under Georgia's choice of law rules, Georgia law uniformly governs those claims. "As the Court's jurisdiction in this matter is based on diversity of citizenship, the Court must apply

the choice of law rules of the forum state—Georgia." *Elder v. Reliance Worldwide Corp.*, No. 1:20-CV-1596-AT, 2021 WL 4558369, at *3 (N.D. Ga. Sept. 27, 2021) (citing *U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp.*, 550 F.3d 1031, 1033 (11th Cir. 2008)). Georgia courts apply the rules of *lex loci contractus* and *lex loci delecti* in addressing choice of law issues. *Rayle Tech, Inc. v. DEKALB Swine Breeders, Inc.*, 133 F.3d 1405, 1409 (11th Cir. 1998). Under these rules, respectively, contract disputes are governed by the "substantive law of the state where the contract was made" and tort disputes are "governed by the substantive law of the state where the tort was committed." *Id.*

Georgia's choice-of-law analysis is unique in "that the application of another jurisdiction's laws is limited to statutes and decisions construing those statutes." *Frank Briscoe Co. v. Ga. Sprinkler Co.*, 713 F.2d 1500, 1503 (11th Cir. 1983). "When no statute is involved, Georgia courts apply the common law as developed in Georgia rather than foreign case law." *Id.* Georgia courts stand alone in following this century-old, controversial practice,[50] but the Georgia Supreme Court, nonetheless,

---

[50] Scholars have criticized this aspect of Georgia's choice-of-law analysis, referring to it as "uncommonly silly, wholly disingenuous, lacking logic, constitutionality, or jurisprudential integrity, distinctly and proudly anachronistic, indefensible, singularly unappealing, and a covert tool for engineering a choice of Georgia law." Symeon C. Symeonides, *Choice of Law in the American Courts in 2020: Thirty-Fourth Annual Survey*, 69 Am. J. Comp. L.

has upheld this aspect of Georgia's choice-of-law rules, rejecting arguments that the approach had been implicitly overruled or is outdated. *Coon v. Med. Ctr., Inc.*, 300 Ga. 722, 730–32 (2017).

Accordingly, regardless of how "anachronistic" this principle is or whether it has "outlived its usefulness," absent an applicable foreign statute, the Court is bound to apply "the common law as expounded by the courts of Georgia" rather than the common law of any foreign jurisdiction. *Coon*, 300 Ga. at 729–33. *See Mt. Hawley Ins. Co. v. E. Perimeter Pointe Apartments*, 861 F. App'x 270, 277 (11th Cir. 2021) ("[T]he Georgia Supreme Court's position is clear" that, "[i]f the law to be applied . . . by a Georgia court or a federal court in Georgia is judicially-created," then Georgia common-law must govern). Mercedes has not identified any foreign statute that would govern Plaintiffs' fraud, negligence, or unjust enrichment claims, and so the Court must apply Georgia common-law. *See, e.g.*, *Elder*, 2021 WL 4558369, at *3 (applying Georgia common-law to claims brought on behalf of a nationwide class).

---

177, 190 (2021) (quoting Joanna B. Apolinsky & Jeffrey A. Van Detta, *The Antebellum Irony of Georgia's Disguised Lex Fori Doctrine: O Where Have You Gone, Brainerd Currie?*, 50 Cumberland L. Rev. 149, 160, 182, 188 (2020) and Gary J. Simpson, *An Essay on Illusion and Reality in the Conflict of Laws*, 70 Mercer L. Rev. 819, 821, 825, 825, 838 (2019)).

It is duly noted that in its briefing, Mercedes cites several class actions from within this district, in which Mercedes was a defendant, where the Court applied the common law of other states.[51] But these opinions did not address the issue of whether Georgia common-law should be applied. *See Callen v. Daimler AG*, No. 1:19-CV-1411-TWT, 2020 WL 10090879, at *8 (N.D. Ga. June 17, 2020); *Pinon v. Daimler AG*, No. 1:18-CV-3984-MHC, 2019 WL 11648560, at *16 (N.D. Ga. Nov. 4, 2019); *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277, 1285 (N.D. Ga. 2018); *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1372 (N.D. Ga. 2013). The Court does not interpret this silence as purposeful disregard for Georgia's choice-of-law precedent.

The Court concludes that Plaintiffs have standing to bring common-law claims on behalf of a nationwide class because Plaintiffs and the absent class members have suffered the same injuries that are "traceable to the alleged violation of" Georgia law. *Lewis*, 530 F. Supp. 3d at 1205.

### C.    GUDTPA

Mercedes argues that Plaintiffs do not have standing to pursue their GUDTPA claims because each Plaintiff was injured in his or her home state, not

---

[51]    ECF 41, at 11–12.

Georgia.[52] Plaintiffs counter that Mercedes made the alleged misrepresentations and omissions at their Georgia headquarters and, therefore, Georgia law applies.[53] The Court agrees with Mercedes and finds that Plaintiffs cannot assert and do not have class representative standing to assert claims under GUDTPA.

As noted, in Georgia, the rule of *lex loci delictis* dictates that "tort cases are generally governed by the substantive law of the place where the tort or wrong occurred. In torts of a transitory nature, the place of the wrong is the place where the last event occurred necessary to make an actor liable for the alleged tort." *Int'l Bus. Machs. Corp. v. Kemp*, 244 Ga. App. 638, 640 (2000). For transitory torts, or for claims sounding in fraud, the "last event" necessary for liability is the place "where that injury [was] sustained." *Id.* (concluding that, although IBM decided to suspend benefits in New York, the "economic damage" of not being reimbursed "occurred in the state of residence of each potential class member"). Accordingly, even though Mercedes allegedly made misrepresentations or omissions in Georgia, each named Plaintiff was injured, for choice-of-law purposes, in the state in which that Plaintiff purchased the Mercedes vehicle with the alleged defect.

---

[52]   ECF 38-1, at 17.

[53]   ECF 39, at 21.

Plaintiffs cite two class actions involving data breaches for the proposition that non-resident plaintiffs can bring consumer protection claims for harm that "emanates" from a company's Georgia-headquarters. *In re Arby's Rest. Grp. Inc. Litig.*, No. 1:17-CV-0514-AT, 2018 WL 2128441, at *18 (N.D. Ga. Mar. 5, 2018); *Willingham v. Glob. Payments, Inc.*, No. 1:12-CV-01157-RWS, 2013 WL 440702, at *15 (N.D. Ga. Feb. 5, 2013). But these cases are readily distinguishable. In both, the data breach involved customer information that was protected and maintained at the company's headquarters in Georgia. Thus, the injury, which was the revealing of customer information, occurred in Georgia. Here, by contrast, Plaintiffs were allegedly injured when they purchased Mercedes vehicles in their home states.

Following Georgia's choice-of-law analysis, if a foreign statute governs, the Court will apply that statute and the relevant state's case law interpreting that statute. *Frank Briscoe Co.*, 713 F.2d at 1503.In fact, each Plaintiff here brings claims, individually and on behalf of a state-wide class, under the consumer protection statute of his or her home state.[54] Thus, the Court will apply the foreign consumer protection statutes, rather than GUDTPA, to Plaintiffs' consumer protection

---

[54]   ECF 1, ¶¶ 225–50 (N.Y. Gen. Bus. Law §§ 349 and 350); ¶¶ 251–86 (Cal. Bus. & Prof. Code §§ 17500, *et seq.* and Cal. Civ. Code §§ 1750, *et seq.*); ¶¶ 304–16 (N.C. Gen. Stat. §§ 75-1.1, *et seq.*).

claims. *Elder*, 2021 WL 4558369, at *3 ("[Class action] [p]laintiffs' consumer protection claims are governed by foreign law because each claim is expressly raised under another state's statute."). No named Plaintiff can bring a claim under GUDTPA because none reside in Georgia. Plaintiffs' GUDTPA claims (Count XII) are dismissed.

### D.     MMWA

In addition to the class standing argument, Mercedes argues that Plaintiffs' MMWA claims should be dismissed because they have failed to satisfy the 100-named-plaintiffs requirement for MMWA class actions. Plaintiffs do not dispute that they failed to meet this requirement but respond that the Class Action Fairness Act (CAFA) supersedes MMWA's jurisdictional requirements.[55]

CAFA, which is the basis for subject matter jurisdiction generally in this case, expanded federal subject matter jurisdiction to include class actions in which minimal diversity exists and the amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d). The MMWA, which was enacted prior to CAFA, provides a federal cause of action for breach of warranty, and allows such claims to be brought "(A) in any court of competent jurisdiction in any State or the District of

---

[55]   ECF 39, at 42–43.

Columbia; or (B) in an appropriate district court of the United States, subject to paragraph (3) of this subsection." 15 U.S.C. § 2310(d)(1). Paragraph (3), in turn, provides that "[n]o claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection . . . if the action is brought as a class action, and the number of named plaintiffs is less than one hundred." 15 U.S.C. § 2310(d)(3). "There is a split of authority assessing the interplay between CAFA and MMWA numerosity requirements, and the Eleventh Circuit has yet to consider the issue." *Lewis*, 530 F. Supp. 3d at 1206.

The parties disagree about which direction the weight of authority leans, but the Court agrees with the *Lewis* court's conclusion that the plain language of the statute is clear. In fact, "it is difficult to conceive how the text could be any clearer: the 100-named-plaintiff limitation applies to the second category (federal district courts), but not the first (courts 'of competent jurisdiction in any State or the District of Columbia')." *Id.* Accordingly, plaintiffs cannot maintain a class action under MMWA in a United States District Court if there are fewer than 100 named plaintiffs.

Plaintiffs ask the Court to construe CAFA in a way that would override the explicit prohibition against MMWA class actions with fewer than 100 named plaintiffs. The Court declines to do so. As the Ninth Circuit found in the only

published circuit court opinion directly addressing this issue, "the legislature's intent to repeal a statute must be 'clear and manifest.' Although CAFA was enacted thirty years after MMWA, CAFA does not demonstrate any intent by Congress to repeal or alter parts of the MMWA's jurisdictional requirements." *Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1035 (9th Cir. 2020) (quoting *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 662 (2007)). *See also Lewis*, 530 F. Supp. 3d at 1207 (quoting *Floyd*).

Ultimately, the result here is compelled by the plain text of the MMWA. "If Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent." *Lewis*, 530 F. Supp. 3d at 1207. (quoting *Lamie v. U.S. Trustee*, 540 U.S. 526, 542 (2004)). Plaintiffs' MMWA claims (Count XIII) are dismissed.

### E.   Due Process

As the Court has found that Plaintiffs have standing to pursue Georgia common-law claims on behalf of the class, it must determine that doing so is consistent with due process. "[I]f Georgia law would require application of its own common law rules to some claims involving purchases in other states, the law of Georgia could be applied consistent with due process only if the particular transaction had some significant relation to Georgia." *Kirkpatrick*, 827 F.2d at 725

(quoting *Phillips Petro. Co. v. Shutts*, 472 U.S. 797, 822 (1985)). Accordingly, Georgia "must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Shutts*, 472 U.S. at 818 (1985) (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 310 (1981)).

Applying Georgia law to Plaintiffs' common law claims is neither arbitrary nor fundamentally unfair. As alleged, MBUSA is headquartered in Georgia,[56] Daimler AG conducts its business in the United States at the MBUSA headquarters in Georgia,[57] Mercedes vehicles are imported into Georgia,[58] and many of the alleged decisions about the marketing of and response to the defective AHR were made in Georgia.[59] These connections sufficiently establish a relationship between Plaintiffs' common-law claims, which allege misrepresentations and omissions made by Mercedes that have a nationwide reach, and the State of Georgia. "Moreover, Georgia has a significant interest in regulating the conduct of businesses operating within its borders, particularly those whose principal place

---

[56] ECF 1, ¶ 35.

[57] *Id.* ¶ 48, 53.

[58] *Id.* ¶ 48.

[59] *Id.* ¶¶ 41, 43, 51, 53–56.

of business is in Georgia. [Mercedes] conducts a substantial amount of business and employs numerous workers in Georgia. Georgia has an interest in regulating such a company." *Terrill*, 753 F. Supp. 2d at 1282. Applying Georgia common-law to Plaintiffs' claims for fraud, negligence, and unjust enrichment is consistent with due process.

### III.   Legal Sufficiency of Claims

#### A.   Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must now contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "However, conclusory allegations, unwarranted deductions of

facts[,] or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt. v. Jaharis*, 297 F.3d 1182, 1187–88 (11th Cir. 2002).

A complaint is plausible on its face when a plaintiff pleads sufficient factual content for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Am. Dental Ass'n,* 605 F.3d at 1289 (citing *Twombly*, 550 U.S. at 556). "A complaint does not state a facially plausible claim for relief if it shows only a sheer possibility that the defendant acted unlawfully." *Waters Edge Living, LLC v. RSUI Indem. Co.,* 355 F. App'x 318, 322 (11th Cir. 2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). This principle, however, does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678.

## B.   Fraudulent Concealment and Misrepresentation (Counts I and II)

Plaintiffs allege that Mercedes fraudulently concealed the nature of the AHR defect and fraudulently misrepresented the safety features of the AHR in its

brochures and marketing material.[60]  These allegations support the fraud claims but are also relevant to Plaintiffs' consumer protection claims, which are predicated on the alleged fraud. The primary issue for the Court to resolve with respect to the fraud allegations is whether Plaintiffs adequately alleged that Mercedes knew of the AHR defect prior to Plaintiffs' purchases. If the Court finds that Plaintiffs plausibly allege Mercedes' pre-purchase knowledge, it must then decide whether Plaintiffs adequately alleged reliance and a duty to disclose.

### 1.    Knowledge

Plaintiffs' claims for fraudulent concealment and fraudulent misrepresentation both require a showing that Mercedes knew about the alleged defect prior to Plaintiffs' purchases. *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1368 (N.D. Ga. 2013) (fraudulent concealment claims require showing actual knowledge of the fact concealed); *First Fin. Sav. & Loan Ass'n v. Title Ins. Co. of Minn.*, 557 F. Supp. 654, 661 (N.D. Ga. 1982) ("An essential element of any fraud claim is that defendant knew his representation was false.").

---

60   ECF 1, ¶¶ 186–99 (Count I: Fraudulent Concealment) and ¶¶ 200–08 (Count II: Fraudulent Misrepresentation).

Relying on *Lewis*, Mercedes argues that Plaintiffs fail to plausibly allege that Mercedes *ever* knew about the AHR defect.[61] Plaintiffs argue in response that, if taken individually the allegations of knowledge may be insufficient, but taken together they raise a plausible inference that Mercedes knew of the defect before Plaintiffs purchased their vehicles.[62] At oral argument, Plaintiffs also represented that the Complaint here differs from the one in *Lewis* because it includes amended allegations detailing the specific tests that are regularly conducted on new motor vehicle products. According to Plaintiffs, this remedies the issues that the *Lewis* court raised in its dismissal order. There, the court found that (1) the allegations about pre-production testing failed to describe what information the testing revealed and, therefore, would not be considered; (2) a single Technical Service Bulletin (TSB) addressing an issue with uncommanded headrest deployment is insufficient to show knowledge; and (3) the twelve consumer complaints cited were not enough, given the large amount of complaints Mercedes receives, to suggest that Mercedes would be on notice of the defect. *Id.* at 1220–24.

---

[61]   ECF 38-1, at 23–28.

[62]   ECF 40, at 21–26.

###### i.      Pre-Production Testing

The Complaint here is, for the most part, identical to that in *Lewis*. As Plaintiffs point out, the only major difference is that Plaintiffs further elaborated on the industry standard tests. The *Lewis* complaint alleged, generally, that Mercedes should have known about the defect based on "pre-production testing, pre-production design failure mode analyses, manufacturing and design validation reports, plastic aging tests." *Id.* at 1199. This allegation failed to plead what the tests would have shown with respect to the plastic latch pin, and the *Lewis* court was right to exclude the alleged testing from consideration. *Id.* at 1221 ("In order for testing allegations to carry some weight, they cannot—as they do here—simply allege that testing was completed and showed a defect.").

In the present Complaint, however, Plaintiffs list three specific tests—FEMA, GEA, and Plastic Creep Testing—and allege that "these tests are standard tests in the automotive industry for new parts."[63] Plaintiffs go on to describe each test, its purpose, and, critically, how the test would have revealed that the latch pin was prone to breaking under normal operation.[64] For example, Plaintiffs allege that "[t]he Plastic Creep Test examines the service life of plastic components

---

[63]   ECF 1, ¶ 129.

[64]   *Id.* ¶¶ 130–33.

subjected to a static load" and that, if the test was performed correctly, it would have "revealed that the ABS plastic used in the NECK-PRO was susceptible to creep under the degree of pressure consistently exerted upon it, and would ultimately fail through normal operation."[65]

True, Plaintiffs still fail to allege which specific tests Mercedes *actually* conducted or what the *actual* results of those tests were. But "[t]his is unsurprising, as Defendants have 'exclusive custody and control' over the details of [ ] testing and the results of that testing." *Pinon*, 2019 WL 11648560, at *19. Unlike the allegations in *Lewis*, Plaintiffs' present allegations regarding the tests are not entirely speculative or conclusory. "[A]t this early stage in the proceedings, it is reasonable to infer that Defendants performed several of the identified . . . tests." *Id.* (considering industry standard tests as one source of knowledge where plaintiffs alleged in detail what the tests would have shown). The Court, therefore, will consider the testing allegations and will consider what, if anything, these allegations add to the plausibility of Mercedes's knowledge.

---

[65]   *Id.* ¶ 132.

### ii.    Technical Service Bulletin

The *Lewis* court found that the October 2008 TSB failed to sufficiently indicate knowledge because it "only generally address[ed] the problem at hand." 530 F. Supp. at 1221. The court discussed district court opinions in which TSBs provided adequate foundation for alleging knowledge and those in which they did not. *Compare In re Gen. Motors Air Conditioning Mktg. and Sales Practices Litig.*, 406 F. Supp. 3d 618, 625 (E.D. Mich. 2019) (TSB specifically referenced the defect), *Pinon*, 2019 WL 11648560, at *20 (TSB unequivocally identified the cause of the exact defect complained of), *and Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090, 1099 (S.D. Fla. 2019) (five TSBs over 18 years showed that manufacturer had been aware of the general problem), *with Sloan v. Gen. Motors LLC*, No. 16-07244, 2017 WL 3283998 (N.D. Cal. Aug. 1, 2017) (one TSB was insufficient where it noted two potential causes for oil loss and failed to mention the allege defect), *Hall v. Gen. Motors, LLC*, No. 19-CV-10186, 2020 WL 1285636, at *6 (E.D. Mich. Mar. 18, 2020) (TSB supported finding that manufacturer knew of some problem, but not of the specific defect), *and Grodzitsky v. Am. Honda Motor Co.*, Inc., No. 12-01142, 2013 WL 690822, at *2 (C.D. Cal. Feb. 19, 2013) (TSB only discussed general problems with product).  Noting that the single TSB cited by the *Lewis* plaintiffs said "[a]lmost nothing about the cause of the problem, and what little it [did] say

points in the opposite direction of the defect claimed by Plaintiffs," the court found that the October 2008 TSB resembled those rejected by other district courts and failed to support a finding that Mercedes plausibly knew, or should have known, about the AHR defect. *Lewis*, 530 F. Supp. 3d, at 1223.

The Court agrees with the *Lewis* court that, by itself, the TSB is insufficient to support a plausible inference that Mercedes knew of the defect. But, drawing inferences in favor of Plaintiffs, the TSB identified the same issue complained of by Plaintiffs, which demonstrates knowledge that something about the headrests was not operating properly, even if the TSB did not explicitly identify the cause. The Court weighs this fact in Plaintiffs' favor.

### iii.   Customer Complaints

Plaintiffs rely on seven customer complaints made to NHTSA and five complaints made on Mercedes-specific online forums, both of which are allegedly regularly monitored by Mercedes.[66] Mercedes argues that this sampling is woefully insufficient to raise a plausible inference of knowledge, considering the large volume of vehicles it produces and complaints it receives.[67]

---

[66]   ECF 1, ¶¶ 136–138.

[67]   ECF 38-1, at 27–28.

The Court finds, however, that Plaintiffs' allegations are more than just a sampling of complaints. Plaintiffs allege that Mercedes regularly reviews NHTSA complaints, making it plausible that Mercedes came across at least some of the complaints regarding uncommanded headrest deployment.[68] Moreover, two of the complaints state that the manufacturer, Mercedes, was notified of the uncommanded deployed,[69] and seven of the complaints state that dealers were notified of the uncommanded deployment but were unable to diagnose the issue.[70] These allegations, accepted as true, indicate that Mercedes was notified on several occasions that headrests with AHR were deploying without a triggering collision.[71] *See Pinon*, 2019 WL 11648560, at *23 (giving weight to allegations that Mercedes tracks online complaints and that dealers were notified of the issue).

"In summary, although each individual piece of information that Plaintiffs rely upon may not, standing alone, demonstrate that Defendants knew of the issues with the [defective AHR] before Plaintiffs purchased their vehicles, the

---

[68]   ECF 1, ¶¶ 135, 137.

[69]   *Id.* ¶¶ 136(b), (e).

[70]   *Id.* ¶¶ 136(b)–(c), (e)–(g), 138 (Mar. 6, 2013 & May 25, 2017 complaints).

[71]   The Court notes that Plaintiffs purchased their vehicles between 2016 and 2019, *id.* ¶¶ 20, 23, 26, 29, and that the sample of complaints were submitted between 2013 and 2019, *id.* ¶¶ 135, 137. The Court considered this overlap and concluded that it does not alter its findings.

Court finds that they do so collectively." *Id.* at \*24 (finding that specific allegations regarding pre-product testing, a TSB, and customer complaints were sufficient to support an inference of knowledge); *Callen*, 2020 WL 10090879, at \*16 (allegations about industry standard pre-market testing were sufficient, as was a pre-sale TSB that identified the underlying cause). It is not implausible that Mercedes, even considering its size and the volume of vehicles it manufactures, knew about the AHR defect. Stated differently, there is more than the "sheer possibility" that Mercedes knew there were problems with the operation of the AHR because of the latch pin. The facts borne out through discovery will ultimately resolve this issue. But to find otherwise at this stage would require the Court improperly to draw inferences in favor of Mercedes.

### 2.   Reliance

Having found that Plaintiffs adequately alleged pre-purchase knowledge, the Court considers whether Plaintiffs have alleged justifiable reliance. Under Georgia law, "[t]he tort of fraud has five elements: (1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages." *McCabe*, 948 F. Supp. 2d. at 1347 (quoting *ReMax N. Atlanta v. Clark*, 244 Ga. App. 890, 537 S.E.2d 138, 141 (2000)). Mercedes argues that Plaintiffs are required to

plead, with particularity, that they were aware or relied upon specific statements, and that they failed to do so.[72] Plaintiffs respond that they are primarily pursuing a claim for fraudulent concealment, which does not require Plaintiffs to allege reliance on specific statements,[73] and depends rather on the nature of the omissions.

Rule of Civil Procedure 9(b) requires that a party alleging fraud "state with particularity the circumstances constituting fraud." *Callen*, 2020 WL 10090879, at *17 ("Because the Plaintiffs allege that they relied on the Defendants' false representations when purchasing their vehicles, they must allege with particularity the 'time, place, and substance' of the Defendants' representations.") (citations omitted) (quoting U.*S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1357 (11th Cir. 2006)). The Court agrees with Mercedes that the Complaint does not contain any specific allegations regarding "when, where, or through what medium [Plaintiffs] heard or read" representations that the AHR was not defective. *Id.* Though the Complaint does detail representations about how the AHR should function in manuals and advertisements,[74] it fails to allege with

---

[72]   ECF 38–1, at 28–29.

[73]   ECF 39, 29.

[74]   ECF 1, ¶¶ 102–16.

particularity that any Plaintiff read these materials.[75] General reliance on Mercedes's reputation for safety is insufficient.

Significantly, however, allegations sufficient to show justifiable reliance on an *omission* differ from those sufficient to show reliance on a *misrepresentation*. By the very nature of fraudulent concealment, plaintiffs cannot be expected to point to the time, place, and precise substance of what should have been disclosed. Rather, it is enough for plaintiffs to allege that a fact was material and that it could have, and should have, been disclosed prior to the time plaintiffs acted upon the omission. *See McCabe*, 948 F. Supp. at 1368 (Plaintiffs alleged "that they expected to receive vehicles free from design or manufacturing defects and that they would not have purchased their vehicles had they known of the defect. Thus, they have plausibly alleged justifiable reliance"); *Amin*, 301 F. Supp. 3d at 1296 (same).

Here, Plaintiffs allege that Mercedes knew about the defective AHR, that Mercedes failed to disclose this defect to its consumers prior to purchasing, and "[h]ad Mercedes disclosed the AHR defect, [Plaintiffs] would not have purchased

---

[75] *Id.* ¶ 21 ("Prior to purchasing the vehicle, Plaintiff Monopoli was aware of, reviewed, or heard Mercedes' warranties and advertisements publicizing its reputation for safety"), ¶ 24 (same for Fitzpatrick), ¶ 27 (same for Praglin), ¶ 32 (same for Harris), ¶ 128 ("Plaintiffs, directly or indirectly, viewed or heard such statements.").

[their] vehicle[s], or would not have paid as much for [them]."[76]  This is sufficient to allege justifiable reliance for purposes of a fraudulent concealment claim. For this reason, the Court grants Mercedes's motion to dismiss with respect to Plaintiffs' fraudulent misrepresentation claim, but not Plaintiffs' fraudulent concealment claim.

### 3.   Duty to Disclose

Mercedes argues that it did not have a duty to disclose any fact about the AHR to Plaintiffs and, therefore, the fraudulent concealment claim fails. Indeed, under Georgia law, to be liable for fraud based on suppression of a material fact, a party must be under an obligation to disclose. O.C.G.A. § 22-2-53. The duty to disclose may arise either from "the confidential relations of the parties or from the particular circumstances of the case." *Id.* "The particular circumstances of the case may give rise to an obligation to communicate where there is a concealment of 'intrinsic qualities of the article which the other party by the exercise of ordinary prudence and caution could not discover.'" *Amin*, 301 F. Supp. 3d at 1296 (quoting *McCabe*, 948 F. Supp. 2d at 1368).

---

[76]   *Id.* ¶¶ 21, 24, 27, 32.

If, as alleged, Mercedes was aware of the AHR defect and yet continued to market AHR as a safety feature, it could plausibly have had an obligation to disclose because no purchaser, by the exercise of ordinary prudence and caution, could have discovered the defect. It is not clear to the Court, however, that each Plaintiff is similarly situated in this respect. Only Plaintiffs Praglin and Harris purchased vehicles from authorized Mercedes dealerships, which allegedly operated as agents of Mercedes.[77] Plaintiffs Monopoli and Fitzpatrick purchased their vehicles from unaffiliated dealerships.[78] The dealer, manufacturer, and purchaser relationships may very well affect the extent of Mercedes's duty to disclose. *See, e.g. Callen*, 2020 WL 10090879, at *18 (finding, under North Carolina, Ohio, Virginia, and Pennsylvania law, that plaintiffs who purchased from authorized dealerships plausibly alleged a duty to disclose, but those who purchased from third-parties did not); *Pinon*, 2019 WL 11648560, at *17 (under Alabama, Arkansas, Louisiana, Tennessee, North Carolina law, plaintiffs who did not purchase from a Mercedes-Benz Center could not bring a fraudulent concealment claim).

---

[77]   ECF 1, ¶¶ 26, 29.

[78]   *Id.* ¶¶ 20, 23.

The cases in which courts found that plaintiffs who purchased from unaffiliated dealerships failed to allege a duty to disclose, however, applied the law of states other than Georgia. In those states, to plausibly allege a duty to disclose the plaintiff must also plead that the omission was "in the context of an arms-length negotiation" with the defendant. *Callen*, 2020 WL 10090879, at *18; *Pinon*, 2019 WL 11648560, at *17 (duty to disclose arises in an arm's length negotiation "where one party has knowledge of a latent defect"). No such requirement exists under Georgia law. In fact, under Georgia law, there is no duty to disclose when the parties are engaged in an arm's length negotiation. *Infrasource, Inc. v. Hahn Yalena Corp.*, 272 Ga. App. 703, 705 (2005) ("In the absence of a confidential relationship, no duty to disclose exists when parties are engaged in arm's-length business negotiations; in fact, an arm's-length relationship by its nature excludes a confidential relationship.")

Whether the "particular circumstances" give rise to a duty to disclose is a mixed question of law and fact and requires a more developed record to determine if Mercedes had a duty to disclose to *any* consumer, regardless of where the consumer purchased the vehicle. At this stage, it suffices that Plaintiffs have "plausibly alleged that Mercedes concealed an intrinsic quality of the Class Vehicles that Plaintiffs and consumers generally could not have discovered in the

exercise of reasonable care." *Amin*, 301 F. Supp. 2d at 1297. *Compare McCabe*, 948 F. Supp. 2d 1368 (applying Georgia law on motion to dismiss, allegations that defendant failed to disclose intrinsic quality that could not have been discovered plausibly alleged duty to disclose) *with McCabe v. Daimler AG*, 160 F. Supp. 3d 1337, 1352 (N.D. Ga. 2015) (applying Georgia law on summary judgment, no evidence showed a relationship between plaintiffs, who purchased from dealerships, and manufacturer and, therefore, plaintiffs failed show a duty to disclose).

### 4.   Causation

Finally, Mercedes argues that Plaintiffs' fraudulent concealment claim fails because they did not adequately plead causation. The Court disagrees. Plaintiffs allege that they would not have purchased a Mercedes vehicle, or would have paid less for one, had they known about the AHR defect.[79] Under Georgia law, this is sufficient to allege causation. *See CSS Real Est. Dev. I, LLC v. State Bank & Tr. Co.*, 324 Ga. App. 184, 186 (2013) (to prove causation, plaintiff must demonstrate that it would not have acted had it known the truth and that it suffered economic loss as a result) (quoting *Holmes v. Grubman*, 286 Ga. 636, 641–642 (2010)).

---

[79]   ECF 1, ¶¶ 21, 24, 27, 32.

The Court denies Mercedes's motion to dismiss Plaintiffs' fraudulent concealment claims (Count I), but grants Mercedes's motion to dismiss Plaintiffs' fraudulent misrepresentation claims (Count II).

### C.     State Statutory Claims

Plaintiffs have also brought claims against Mercedes under the relevant consumer protection statutes of their home states. Mercedes has moved to dismiss each for failure to state a claim. Mercedes's arguments for dismissal of these claims mirror its arguments for dismissal of the common-law fraud claims. Thus, much of the analysis is the same and the Court relies on its prior reasoning where applicable.

### 1.     N.Y. Gen. Bus. Law §§ 349 and 350 (Counts V and VI)

Plaintiff Monopoli brings claims, on behalf of himself and a putative New York state-wide class, under New York General Business Law §§ 349 and 350. Section 349 gives a private right of action to any person who is injured by illegal deceptive business practices. *City of N.Y. v. Smokes-Spirits.Com, Inc.*, 911 N.E.2d 834, 837 (N.Y. 2009). A plaintiff bringing such a claim "must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Id.* Because a false advertising claim under § 350 "contain[s] the same

elements, courts address §§ 349 and 350 claims together." *Kommer v. Ford Motor Co.*, No. 117CV0296LEKDJS, 2018 WL 3727353, at *2 (N.D.N.Y. Aug. 6, 2018).

Mercedes first argues that Monopoli's claims fail because he did not plead reliance upon any actionable misrepresentation.[80] As discussed, Mercedes is correct that Monopoli failed to allege reliance on a specific misrepresentation, and therefore he cannot pursue his New York state law claims on this theory.

Mercedes also argues that Monopoli failed to plausibly allege that it knew of the defect, which is required for a failure to disclose claim under §§ 349 and 350. *Id.* ("To state a failure to disclose claim, a plaintiff must plausibly allege that (1) 'a business alone possesse[d] material information that is relevant to the consumer'; and (2) it 'fail[ed] to provide this information.'") (citations omitted). The Court has already found that Plaintiffs, including Monopoli, plausibly alleged that Mercedes had knowledge of the defect. Monopoli's claims under New York General Business Law §§ 349 and 350, therefore, survive dismissal on a failure to disclose theory. Mercedes's motion to dismiss Counts V and VI is denied.

---

[80]   ECF 38-1, at 36.

### 2.   North Carolina Unfair and Deceptive Trade Practices Act (NCUDTPA) (Count XI)

Plaintiff Fitzpatrick brings claims, on behalf of himself and a putative North Carolina state-wide class, under North Carolina's Unfair and Deceptive Trade Practices Act, which prohibits "unfair or deceptive acts or practices in or affecting commerce." N.C.G.S. § 75-1.1(a). Mercedes moved to dismiss Fitzpatrick's claims, arguing that he failed to adequately allege that he relied on an actionable misrepresentation, that Mercedes had pre-purchase knowledge of the defect, or that any misrepresentation or omission caused his injury.[81] Mercedes also argues that Fitzpatrick's claim is barred by the economic loss rule.[82]

First, a NCUDTPA claim "stemming from an alleged misrepresentation does indeed require a plaintiff to demonstrate reliance on the misrepresentation in order to show the necessary proximate cause." *Bumpers* v. *Cmty. Bank of N. Va.*, 747 S.E.2d 220, 226 (N.C. 2013). To show actual reliance, a plaintiff must have "affirmatively incorporated the alleged misrepresentation into his or her decision-making process." *Id.* Fitzpatrick failed to adequately allege that he relied on any misrepresentation, and so he cannot bring a NCUDTPA claim on a

---

[81] *Id.* at 37–38.

[82] *Id.* at 39.

misrepresentation theory. As for Mercedes's second argument, Fitzpatrick adequately alleged that Mercedes had pre-purchase knowledge of the defect, and so his omission-based NCUDTPA claim does not fail for this reason.

Separately, Mercedes's argument regarding causation is slightly off the mark. Fitzpatrick did allege that he relied on Mercedes's omission in purchasing his vehicle, and so he has sufficiently alleged causation. The case law cited by Mercedes, however, presents a different problem for Fitzpatrick. As the Court has already noted, North Carolina law differs from Georgia law on when a duty to disclose arises. Under North Carolina law, absent a fiduciary relationship, a duty to disclose only arises when the parties negotiated at arm's length. *Harton v. Harton,* 344 S.E.2d 117, 119 (N.C. 1986) *(*a duty to disclose arises (1) where a fiduciary duty exists or (2) where the parties are negotiating at arm's length and one "party has taken affirmative steps to conceal material facts from the other" or "one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence").

Fitzpatrick did not engage in an arm's length negotiation with Mercedes, or any negotiation at all, because he bought his vehicle used from an unaffiliated

dealership.[83] *Callen*, 2020 WL 10090879, at *18 (no duty to disclose under North Carolina law where plaintiffs bought vehicle from unaffiliated dealership because they failed to allege a negotiation); *Pinon*, 2019 WL 11648560, at *16 (same); *Darne v. Ford Motor Co.*, No. 13 C 03594, 2015 WL 9259455, at *11 (N.D. Ill. Dec. 18, 2015) (same). The Court, therefore, grants Mercedes's motion to dismiss Fitzpatrick's NCUDTPA claims (Count XI) because he has failed to allege a duty to disclose.

### 3.    California Statutory Claims (Counts VII, VIII,  IX, and X)

Plaintiffs Praglin and Harris bring four California statutory claims, on behalf of themselves and on behalf of a California state-wide class. They bring claims against Mercedes under California's Unfair Competition Law (UCL), Consumer Legal Remedies Act (CLRA), and False Advertising Law (FAL) for misrepresenting or concealing facts relating to the AHR defect. They also bring claims under the Song-Beverly Consumer Warranty Act for breach of the implied warranty of merchantability. Mercedes moves to dismiss these two categories of claims for different reasons, and the Court addresses each in turn.

### i.    UCL, CLRA, and FAL Claims

Mercedes moves to dismiss the California consumer protection claims for familiar reasons. Mercedes argues that Plaintiffs Praglin and Harris failed to

---

[83]   ECF 1, ¶ 23.

adequately allege that Mercedes had pre-purchase knowledge, that they relied on an actionable misrepresentation or omission, or that any such misrepresentation or omission caused their injury.[84]

For the reasons already articulated, the Court finds that the UCL and CLRA claims can proceed on the theory that Mercedes concealed material facts about the AHR defect, but not on the theory that Mercedes misrepresented material facts. This is true even under California's more stringent analysis for establishing reliance, as Praglin and Harris both allege that they reviewed Mercedes's warranty and marketing materials prior to their purchase.[85] *See In re Tobacco II Cases*, 207 P.3d 20, 39 (Cal. 2009) ("Reliance is proved by showing that the defendant's misrepresentation or nondisclosure was 'an immediate cause' of the plaintiff's injury-producing conduct."); *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 919 (C.D. Cal. 2010) (plaintiff failed to allege reliance on omission where he did not allege "that, before he bought his [vehicle], he reviewed any brochure, website, or promotional material that might have contained a disclosure").

Praglin and Harris's FAL claims fail, however, because "[t]he FAL requires an untrue or misleading statement," and because their "surviving concealment

---

[84]   ECF 38-1, at 39–42.

[85]   ECF 1, ¶¶ 27, 32.

claims are based on omissions, not misleading statements or partial representations . . . [they] cannot make out a claim under the FAL." *Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212, 1222 (C.D. Cal. 2012). Accordingly, the Court will grant Mercedes's motion to dismiss Praglin and Harris's FAL claims (Count IX) but will deny the motion with respect to the UCL and CLRA claims (Counts VII and VIII).

### ii.    Song-Beverly Consumer Warranty Act

Praglin and Harris claim that Mercedes violated the Song-Beverly Consumer Warranty Act because the defective AHR makes their vehicles unfit for their ordinary purposes.[86] Mercedes moves to dismiss these claims, arguing that the vehicles still provide safe, reliable transportation and that the Song-Beverly Act does not apply to claims against vehicle manufacturers where the vehicle was purchased at a dealership.[87] Plaintiffs respond that an uncommanded headrest deployment is a safety issue, implicating merchantability,[88] and that the Act can apply to a dealership operating as an agent of the manufacturer.[89]

---

[86]   *Id.* ¶¶ 293–301.

[87]   ECF 38-1, at 18–29.

[88]   ECF 39, at 34–36.

[89]   *Id.* at 36.

As to Mercedes's first argument, the Court is not persuaded that, as alleged, Mercedes vehicles with defective AHRs are fit for their ordinary purpose as contemplated under Cal. Civ. Code § 1791.1(a). A headrest that may deploy randomly and strike a driver in the head during normal operation presents a risk that implicates the vehicle's safety and reliability, as well as presenting risks to the driver, passengers, and others, therefore making it potentially unfit for its ordinary purpose. *Sater v. Chrysler Grp. LLC*, No. EDCV 14-00700-VAP, 2015 WL 736273, at *9 (C.D. Cal. Feb. 20, 2015) (the ordinary purpose of a vehicle is to provide "safe, reliable transportation") (quoting *Am. Suzuki Motor Corp. v. Super. Ct.*, 37, 44 Cal. Rptr. 2d 526 (Cal. App. 1995)).

The Court agrees with Mercedes, however, that Praglin and Harris cannot pursue their implied warranty claims against Mercedes because the Song-Beverly Act only imposes an obligation on "the distributor or retail seller . . . with respect to used consumer goods (and not the original manufacturer)." Cal. Civ. Code § 1795.5(a). Praglin and Harris both purchased used Mercedes from dealerships,[90] and "[b]ecause the Song–Beverly Act does not create any obligation on behalf of [Mercedes], the original car manufacturer, with respect to used goods," the Court

---

90   *Id.* ¶¶ 26, 29.

will grant Mercedes's motion to dismiss these claims (Count X). *Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1179 (N.D. Cal. 2017). *See also Victorino v. FCA US LLC*, 326 F.R.D. 282, 301 (S.D. Cal. 2018) (plaintiff "failed to demonstrate that the Song–Beverly Act imposes liability on the car manufacturer for class members' purchase of used vehicles from authorized dealerships").

### D.   Negligence (Counts III and IV)

Plaintiffs have asserted two negligence claims. First, Plaintiffs allege that Mercedes negligently designed and manufactured the AHR system by choosing a cheap plastic material for the latch pin.[91] Plaintiffs also allege that Mercedes was negligent in failing to warn its consumers about the AHR defect.[92] Mercedes has moved to dismiss both claims as barred by the economic loss doctrine.[93]

The Court has already determined that Georgia law applies to Plaintiffs' common-law claims, including their negligence claims. Under Georgia law,

> "[T]he economic loss rule prevents recovery in tort when [the] defective product has resulted in the loss of value or use of the thing sold, or the cost of repairing it." "Under such circumstances, the duty breached is generally a contractual one and the plaintiff is merely suing for the benefit of his bargain." But the economic loss rule does not prevent a tort action to recover for

---

[91]   *Id.* ¶¶ 209–15.

[92]   *Id.* ¶¶ 215–24.

[93]   ECF 38-1, at 43–44.

> injury to *other property* and persons because the duty
> breached generally arises independently of the contract.

*The Pillsbury Co. v. W. Carrollton Parchment Co.*, 210 F. App'x 915, 918 (11th Cir.

2006) (citations omitted) (emphasis in original) (quoting *Flintkote Co. v. Dravo*

*Corp.*, 678 F.2d 942, 948 (11th Cir. 1982)). Plaintiffs contend that Georgia law

imposes extracontractual duties on manufacturers to produce non-hazardous

products and to warn consumers of latent defects.[94] Whether these duties exist,

however, is irrelevant. Plaintiffs do not allege an injury to any person or to any

property other than their own vehicles. Plaintiffs' only alleged injury is the

diminished value of their vehicles, or the "lost benefit of their bargains."[95]

Plaintiffs' negligence claims are therefore barred by the economic loss doctrine.

*Flintkote Co.*, 678 F.2d at 947 ("Georgia decisions addressing this issue have in

almost all cases held that a plaintiff simply cannot recover in tort for economic

losses resulting from loss of value or use of the thing sold.").

---

[94]   ECF 41, at 25–26.

[95]   ECF 1, ¶¶ 21, 24, 27, 32, 214 ("As a direct, legal, and proximate result of
Daimler's negligent design and manufacture, Plaintiffs and the Class suffered
economic losses in the form of the lost benefit of their bargains with Mercedes
and its agents."), 223 ("Plaintiffs and the Class suffered damages in the form
of the lost benefit of their bargains as a direct and proximate result of
Mercedes' failure to warn. Plaintiffs would not have purchased their vehicles,
or would have paid less, had Mercedes warned them of the dangers associated
with the defect.").

To foreclose any possible confusion, the Court notes that the economic loss doctrine does not bar Plaintiffs' fraud claims. Georgia law recognizes an exception to the economic loss rule, known as the misrepresentation exception, under which "[o]ne who supplies information during the course of his business" owes an independent duty of reasonable care to parties who rely on that information and use the information as the supplier intended. *Holloman v. D.R. Horton, Inc.*, 241 Ga. App. 141, 148 (1999) (quoting *Advanced Drainage Sys., Inc. v. Lowman*, 210 Ga. App. 731, 734 (1993)). This exception applies in cases alleging both fraudulent misrepresentation and concealment. *Holloman,* 241 Ga. at 148 ("The economic loss rule is inapplicable in the presence of passive concealment or fraud."). As discussed above, therefore, Plaintiffs' fraudulent concealment claims survive.

Plaintiffs' negligence claims (Counts III and IV) are dismissed.

### E.   Unjust Enrichment (Count XIV)

Mercedes moves to dismiss Plaintiffs' unjust enrichment claim, arguing that (1) Plaintiffs' claims are exclusively governed by an express contract, *i.e.*, the vehicle warranties,[96] (2) Plaintiffs purchased the vehicles used and, therefore, never conferred a benefit onto Mercedes,[97] and (3) specifically as to Monopoli, his

---

[96]   ECF 38-1, at 44.

[97]   *Id.* at 45–46.

unjust enrichment claim cannot be predicated on the same facts as claims brought under N.Y. Gen Bus. Law §§ 349 and 350.[98]

As to Mercedes's first argument, Plaintiffs have not alleged that any express warranties exist for their vehicles and Mercedes has not identified any. This distinguishes those cases cited by Mercedes, in which the existence of a warranty was not in dispute. *Callen*, 2020 WL 10090879, at *13 (noting plaintiffs "d[id] not dispute that the parties are bound by the terms of the [warranties]."); *Pinon*, 2019 WL 11648560, at *13 ("Plaintiffs do not dispute that the [warranties] exist and do not challenge their validity or enforcement."); *McCabe*, 948 F. Supp. 2d 1347, 1366 ("[A]llow[ing] Plaintiffs to recover under [an unjust enrichment] theory would render the warranty limitations meaningless.") The Court will not dismiss Plaintiffs' unjust enrichment claims for this reason.

Mercedes's second argument is more compelling.

> To state a claim for unjust enrichment under Georgia law, a plaintiff must assert that (1) the defendant induced or encouraged the plaintiff to provide something of value to the defendant; (2) the plaintiff provided a benefit to the defendant with the expectation that the defendant would be responsible for the cost thereof; and (3) the defendant knew of the benefit being bestowed upon it by the plaintiff and either affirmatively chose to accept the benefit or failed to reject it. In addition, "to maintain an

---

[98]    *Id.* at 44–45.

> action for unjust enrichment, it is not necessary that the
> plaintiff allege a direct payment by the plaintiff to the
> allegedly unjustly-enriched defendant."

*Bowen v. Porsche Cars, N.A., Inc.*, No. 1:21-CV-471-MHC, 2021 WL 4726586, at *11

(N.D. Ga. Sept. 20, 2021) (citations omitted) (citing *Campbell v. Ailion*, 338 Ga. App.

382, 387 (2016) and quoting *Bolinger*, 838 F. Supp. 2d at 1367 n.2).

Though Plaintiffs do not need to allege a direct benefit to sustain their unjust

enrichment claims, they must allege that Mercedes knowingly benefited from

Plaintiffs' purchases. Monopoli and Fitzpatrick bought their used vehicles from

dealerships unaffiliated with Mercedes.[99] Plaintiffs have neither alleged nor

argued how Mercedes would knowingly benefit from used vehicles purchased

from independent dealerships. The Court, therefore, dismisses Monopoli and

Fitzpatrick's unjust enrichment claims.

As for Praglin and Harris, who purchased from Mercedes-affiliated

dealerships, Plaintiffs argue that they "paid a premium to authorized Mercedes

dealerships, which was passed on to Mercedes."[100] Under this theory, the affiliated

dealerships act as agents for Mercedes and Mercedes generates revenue from used

---

[99]  *Id.* ¶¶ 20, 23.

[100]  ECF 39, at 45.

car sales. This is sufficient to state a claim for unjust enrichment. Therefore, only Plaintiffs Praglin and Harris may pursue unjust enrichment claims (Count XIV).

### F.   Injunctive Relief

Finally, Mercedes moves to dismiss Plaintiffs' request for injunctive relief because Plaintiffs have an adequate remedy at law.[101]  Plaintiffs failed to respond to this argument. The Court agrees that Plaintiffs have failed to allege an inadequate remedy at law. Though other courts in this district have permitted claims for injunctive relief to proceed past the pleadings stage, *see Amin*, 301 F. Supp. 3d at 1297 (declining to decide appropriateness of injunctive relief without fuller record) and *Callen*, 2020 WL 10090879, at *25 (finding "no reason . . . to preclude the Plaintiffs from seeking equitable relief before development of a fuller evidentiary record"), the Court finds that, particularly given Plaintiffs' failure to respond to Mercedes's argument, dismissal is warranted. *See Clark v. Aaron's, Inc.*, 914 F. Supp. 2d 1301, 1307 (N.D. Ga. 2012) (plaintiff not entitled to injunctive relief where compensatory damages are adequate).

---

[101]   ECF 38-1, at 46–47.

**IV.    CONCLUSION**

Mercedes's motion to dismiss [ECF 38] is **GRANTED IN PART AND DENIED IN PART**.

Counts II (Fraudulent Misrepresentation); III (Negligent Design & Manufacture); IV (Negligent Failure to Warn); IX (California False Advertising Law); X (Song-Beverly Consumer Warranty Act); XI (North Carolina Unfair and Deceptive Trade Practices Act); XII (Georgia Uniform Deceptive Trade Practices Act); and XIII (Magnuson-Moss Warranty Act); as well as Monopoli's and Fitzpatrick's unjust enrichment claims (Count XIV) and Plaintiffs' request for injunctive relief, are **DISMISSED**.

If Plaintiffs choose to file an Amended Complaint to cure any deficiencies identified herein, they are **GRANTED** leave to do so within 14 days of this Order. Within 30 days of this Order, Defendants shall either Answer the operative Complaint or, if Plaintiffs file an Amended Complaint, may move to dismiss.

**SO ORDERED** this 10th day of February, 2022.

Steven D. Grimberg
United States District Court Judge